STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE

COUNTY OF DURHAM     2021 OCT 22   SUPERIOR COURT DIVISION

DURHAM CO., C.S.C.

BY_____

| | |
|---|---|
| JAMES JORDAN, CBS INSURANCE, INC., EMPLOYERS FIRST CHOICE INSURANCE SERVICES INC., JAMES HELBIG, BRET FIELDS, TARGET, INC., LENNY MILLER, CHRIS BENKENDORF, NATIONAL BENEFITS GROUP MIDWEST LLC, MICHAEL TOLOMEI, THOMAS FLETCHER, CERTIFIED FINANCIAL SERVICES INC. f/k/a FLETCHER & ASSOCIATES LTD., AMERICA'S HEALTH CARE/RX PLAN AGENCY, INC., MICHAEL NORDQUIST, CONSOLIDATED FINANCIAL GROUP, LLC, BENEFITS FOR AMERICA INSURANCE SERVICES, INC., and PLAN AMERICA FINANCIAL SERVICES, INC. on behalf of themselves and all others similarly situated, | **CASE NUMBER:** _____ |

Plaintiffs,

v.

PREFERRED FINANCIAL
CORPORATION, LLC,

Defendant.

**CLASS ACTION COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs James Jordan, CBS Insurance, Inc., Employers First Choice

Insurance Services Inc., James Helbig, Bret Fields, Target, Inc., Lenny Miller, Chris

1

Benkendorf, National Benefits Group Midwest LLC, Michael Tolomei, Thomas Fletcher, Certified Financial Services Inc. f/k/a Fletcher & Associates LTD., Americas Health Care / RX Plan Agency, Inc., Michael Nordquist, Consolidated Financial Group, LLC, Benefits for America Insurance Services, Inc., and Plan America Financial Services, Inc. (collectively "Plaintiffs") file this Complaint against Preferred Financial Corporation, LLC ("Defendant" or "PFC") and states:

## NATURE OF THE ACTION

1.      Plaintiffs were former insurance agents or agencies duly authorized to solicit, negotiate, issue, and/or sell insurance policies issued by Colorado Bankers Life Insurance Company ("CBL") for the benefit of CBL and Preferred Financial Corporation ("PFC"). In or around July of 2019, Plaintiffs, along with a large group of other insurance agents/agencies across the country, were, suddenly and without warning, blocked from receiving commissions that were due to be paid on an ongoing basis. Plaintiffs and all others similarly situated had earned commissions associated with the selling and servicing of policies issued by CBL and were and are entitled to be compensated for these earned commissions. Notwithstanding the same, PFC and CBL failed to pay these commissions that are due and owing. Plaintiffs, on behalf of themselves and all other agents similarly situated, brings this action to recover unpaid commissions unlawfully and willfully withheld by PFC and CBL.

## JURISIDICTION AND VENUE

2.      The foregoing allegations are incorporated by reference and realleged herein.

2

3.     This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. § 1-79.

4.     Venue is proper under N.C.G.S. § 1-79 in that PFC and CBL maintains a place of business in Durham County, North Carolina, and have regularly engaged in business in Durham County, North Carolina.

## PARTIES

5.     The foregoing allegations are incorporated by reference and realleged herein.

6.     Plaintiff James Jordan is a citizen and resident of Arizona who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between himself and Defendant PFC for the benefit of PFC and CBL.

7.     Plaintiff CBS Insurance, Inc. is a corporation organized and existing pursuant to the laws of the state of Arizona who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract with Defendant PFC for the benefit of PFC and CBL.

8.     Plaintiff Employers First Choice Insurance Services Inc. is a corporation organized and existing pursuant to the laws of the state of California who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract with Defendant PFC for the benefit of PFC and CBL.

9.     Plaintiff James Helbig is a citizen and resident of St. Charles, Missouri

3

who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract with Defendant PFC for the benefit of PFC and CBL.

10. Plaintiff Bret Fields is a citizen and resident of Clifton, Virginia who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between himself and Defendant PFC for the benefit of PFC and CBL.

11. Plaintiff Target, Inc. is a corporation organized and existing pursuant to the laws of the state of Virginia who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract with Defendant PFC for the benefit of PFC and CBL.

12. Plaintiff Lenny Miller is a citizen and resident of Baltimore, Maryland who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between himself and Defendant PFC for the benefit of PFC and CBL.

13. Plaintiff Chris Benkendorf is a citizen and resident of Belleville, Illinois who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between himself and Defendant PFC for the benefit of PFC and CBL.

14. Plaintiff National Benefits Group Midwest LLC is limited liability company organized under the laws of the state of Illinois who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant

4

to a contract between himself and Defendant PFC for the benefit of PFC and CBL.

15. Plaintiff Michael Tolomei is a citizen and resident of Michigan who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract with Defendant PFC for the benefit of PFC and CBL.

16. Plaintiff Thomas Fletcher is a citizen and resident of Arizona who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between himself and Defendant PFC for the benefit of PFC and CBL.

17. Plaintiff Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd. is limited liability company organized under the laws of the state of Arkansas, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between itself and Defendant PFC for the benefit of PFC and CBL.

18. Plaintiff America's Health Care/RX Plan Agency, Inc. is a corporation organized under the laws of the state of Delaware who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between itself and Defendant PFC for the benefit of PFC and CBL.

19. Plaintiff Michael Nordquist is a dual citizen and resident of Nevada and Oregon who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between himself and Defendant PFC for the benefit of PFC and CBL.

20. Plaintiff Consolidated Financial Group, LLC is a limited liability

5

company organized under the laws of the state of Nevada who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between itself and Defendant PFC for the benefit of PFC and CBL.

21. Upon information and belief, Defendant Preferred Financial Corporation, LLC is a limited liability company organized under the laws of the state of North Carolina with a principal place of business in Durham, North Carolina, and, upon information and belief, regularly conducts business in each state in the United States of America.

## GENERAL BACKGROUND

22. The foregoing allegations are incorporated by reference and realleged herein.

23. CBL was an insurance company organized, upon information and belief, to create, market, and issue four primary insurance policies: (1) a split fund life insurance policy with an annuity rider and an option to open a standalone annuity policy (known as a "security builder"); (2) a 10-year term life insurance policy with a critical illness rider; (3) an accident medical expense policy and an accidental injury policy; and, (4) a "final expense policy" to cover an insured's funeral expenses (hereinafter the "CBL Policies").

24. PFC acted essentially as a "holding company" of CBL.

25. Plaintiffs and all others similarly situated had a direct contractual relationship with PFC to sell CBL Policies ("PFC/CBL Contract Holders"), who may have contractual relationships or agreements with other agents who were granted

6

licenses to sell, solicit, and negotiate life insurance and annuity contracts on behalf of PFC and CBL ("PFC/CBL Agents").

26.     PFC/CBL Contract Holders and the PFC/CBL Agents earn commissions based upon the payment of CBL Policy premiums paid by CBL Policyholders in accordance with commission schedules maintained by PFC/CBL, PFC/CBL Contract Holders, and the PFC/CBL Agents.

27.     PFC/CBL Contract Holders may also earn "persistency" commissions based upon CBL Policyholders maintaining CBL Policies over longer terms.

28.     PFC/CBL Contract Holders include but are not necessarily limited to: Managing General Agents/Agencies ("MGA"), General Agents/Agencies ("GA"), and Independent Marketing Organizations ("IMO").

29.     MGAs, GAs, and IMOs may have PFC/CBL Agents operating as insurance agents directly underneath them. In these circumstances, the PFC/CBL Contract Holders and the PFC/CBL Agents have an agreement to share the commissions according to a pre-arranged split. In certain circumstances, PFC/CBL agreed to directly pay the shared commission amongst the PFC/CBL Contract Holders and the PFC/CBL Agents.

30.     PFC/CBL Contract Holders and PFC/CBL Agents are responsible for servicing and maintaining relationships with CBL Policyholders even after the sale of the specific CBL Policy.

31.     Although Plaintiffs generally communicated directly with CBL in the selling, soliciting, or negotiating of CBL Policies, in practice, PFC held itself out to

7

the public, to agents/agencies, and to policyholders as doing business as CBL or being one-of-the-same with CBL. For example, in the contracts with various agencies, agents, or independent marketing organizations ("IMO"), PFC and CBL would be used interchangeably. Additionally, when commissions were electronically deposited into Plaintiffs' account or when physical commission checks were issued, they interchangeably referenced "Colorado Bankers Life," "Preferred Financial Corporation, "Colorado Bankers Life / PFC", "CBLife" "PFC," or some other iteration of the same. Similarly, earnings statements for PFC/CBL Contract Holders and the PFC/CBL Agents were maintained on CBL's website, but would identify "Preferred Financial Corporation" on the statement. Moreover, upon information and belief, 1099-Misc. forms related to the payment of commissions on CBL Policies were issued to agents from PFC, not from CBL.

32.     In fact, CBL and PFC were asked by agents on various occasions to be more careful in how the entities held themselves out to the public due to the confusion of policyholders.

33.     Upon information and belief, during all relevant time periods, jointly employed the individuals who operated, controlled, and managed CBL.

34.     Upon information and belief, during all relevant time periods, CBL and PFC jointly employed the individuals who made the decision not to appropriately compensate Plaintiffs and all others similarly situated.

35.     Upon information and belief, Defendant PFC maintained significant operational control over the day-to-day decisions at CBL, including with respect to

8

the payment of the commissions owed to Plaintiffs and all others similarly situated.

36. PFC and CBL all maintain identical principal office addresses, mailing addresses, and registered agents.

## PLAINTIFFS' SPECIFIC BACKGROUNDS

37. Plaintiff CBS Insurance, Inc. was a PFC/CBL Contract Holder in that it was an MGA in relation to CBL/PFC.

38. Plaintiff CBS Insurance, Inc. was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between CBS Insurance, Inc. and Defendant PFC for the benefit of PFC and CBL.

39. Plaintiff CBS Insurance, Inc., through its insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

40. Plaintiff CBS Insurance, Inc. was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to CBS Insurance, Inc.

41. CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff CBS Insurance, Inc. for the CBL Policies issued, sold, or serviced on its behalf.

42. During all relevant times, Plaintiff James Jordan was a PFC/CBL

9

Contract Holder in that he was a GA for CBL/PFC.

43. Plaintiff James Jordan solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

44. Plaintiff James Jordan was appropriately paid commissions for the CBL Policies he solicited, negotiated, sold, issued, and/or serviced throughout the entirety of his relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to him.

45. CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff James Jordan for the CBL Policies he issued.

46. Plaintiff Employers First Choice Insurance Services Inc. was a PFC/CBL Contract Holder in that it was an MGA in relation to CBL/PFC.

47. Plaintiff Employers First Choice Insurance Services Inc. was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between Employers First Choice Insurance Services Inc. and Defendant PFC for the benefit of PFC and CBL.

48. Plaintiff Employers First Choice Insurance Services Inc., through its insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

49. Plaintiff Employers First Choice Insurance Services Inc. was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the

10

entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to Employers First Choice Insurance Services Inc.

50.  CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Employers First Choice Insurance Services Inc. for the CBL Policies issued, sold, or serviced on its behalf.

51.  Plaintiff James Helbig was a PFC/CBL Contract Holder in that he was an MGA in relation to CBL/PFC.

52.  Plaintiff James Helbig was, during all relevant time periods, duly authorized to, through his agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between James Helbig and Defendant PFC for the benefit of PFC and CBL.

53.  Plaintiff James Helbig, through his insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

54.  Plaintiff James Helbig was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by him and his agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to James Helbig and the agents and independent contractors under him.

55.  CBL and PFC have no lawful basis to avoid paying the commissions to

11

Plaintiff James Helbig for the CBL Policies issued, sold, or serviced by him or on his behalf.

56.     During all relevant times, Plaintiff Bret Fields was a PFC/CBL Contract Holder in that he was an GA for PFC/CBL.

57.     Plaintiff Bret Fields solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

58.     Plaintiff Bret Fields was appropriately paid commissions for the CBL Policies he solicited, negotiated, sold, issued, and/or serviced throughout the entirety of his relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to him.

59.     CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Bret Fields for the CBL Policies he issued.

60.     Plaintiff Target, Inc. was a PFC/CBL Contract Holder in that it was a GA in relation to CBL/PFC.

61.     Plaintiff Target, Inc. was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between Target, Inc. and Defendant PFC for the benefit of PFC and CBL.

62.     Plaintiff Target, Inc., through its insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

63.     Plaintiff Target, Inc. was appropriately paid commissions for the CBL

12

Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to Target, Inc.

64.    CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Target, Inc. for the CBL Policies issued, sold, or serviced on its behalf.

65.    During all relevant times, Plaintiff Lenny Miller was a PFC/CBL Contract Holder in that he was a GA for CBL/PFC.

66.    Plaintiff Lenny Miller solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

67.    Plaintiff Lenny Miller was appropriately paid commissions for the CBL Policies he solicited, negotiated, sold, issued, and/or serviced throughout the entirety of his relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to him.

68.    CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Lenny Miller for the CBL Policies he issued.

69.    During all relevant times, Plaintiff Chris Benkendorf was a PFC/CBL Contract Holder in that he was an IMO for PFC/CBL.

70.    Plaintiff Chris Benkendorf solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

71.    Plaintiff Chris Benkendorf was appropriately paid commissions for the CBL Policies he solicited, negotiated, sold, issued, and/or serviced throughout the

13

entirety of his relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to him.

72.     CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Chris Benkendorf for the CBL Policies he issued or that were issued by other agents on his behalf.

73.     Plaintiff National Benefits Group Midwest LLC was a PFC/CBL Contract Holder in that it was an IMO in relation to CBL/PFC.

74.     Plaintiff National Benefits Group Midwest LLC was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between National Benefits Group Midwest LLC and Defendant PFC for the benefit of PFC and CBL.

75.     Plaintiff National Benefits Group Midwest LLC, through its insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

76.     Plaintiff National Benefits Group Midwest LLC was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to National Benefits Group Midwest LLC.

77.     CBL and PFC have no lawful basis to avoid paying the commissions to

14

Plaintiff National Benefits Group Midwest LLC for the CBL Policies issued, sold, or serviced on its behalf.

78. During all relevant times, Plaintiff Michael Tolomei was a PFC/CBL Contract Holder in that he was an IMO for PFC/CBL.

79. Agents and independent contractors on behalf of Plaintiff Michael Tolomei solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

80. Plaintiff Michael Tolomei was appropriately paid commissions for the CBL Policies he solicited, negotiated, sold, issued, and/or serviced throughout the entirety of his relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to him.

81. CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Michael Tolomei for the CBL Policies he issued or that were issued by other agents on his behalf.

82. During all relevant times, Plaintiff Thomas Fletcher was a PFC/CBL Contract Holder in that he was an IMO for PFC/CBL.

83. Plaintiff Thomas Fletcher solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

84. Plaintiff Thomas Fletcher was appropriately paid commissions for the CBL Policies he solicited, negotiated, sold, issued, and/or serviced throughout the entirety of his relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to him.

15

85. CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Thomas Fletcher for the CBL Policies he issued or that were issued by other agents on his behalf.

86. Plaintiff Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd. was a PFC/CBL Contract Holder in that it was an IMO in relation to CBL/PFC.

87. Plaintiff Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd. was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd. and Defendant PFC for the benefit of PFC and CBL.

88. Plaintiff Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd., through its insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

89. Plaintiff Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd. was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd.

90. CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Certified Financial Services Inc. f/k/a Fletcher & Associates Ltd. for the

16

CBL Policies issued, sold, or serviced on its behalf.

91.    Plaintiff America's Health Care/RX Plan Agency, Inc. was a PFC/CBL Contract Holder in that it was an IMO in relation to CBL/PFC.

92.    Plaintiff America's Health Care/RX Plan Agency, Inc. was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between America's Health Care/RX Plan Agency, Inc. and Defendant PFC for the benefit of PFC and CBL.

93.    Plaintiff America's Health Care/RX Plan Agency, Inc., through its insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

94.    Plaintiff America's Health Care/RX Plan Agency, Inc. was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to America's Health Care/RX Plan Agency, Inc.

95.    CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff America's Health Care/RX Plan Agency, Inc. for the CBL Policies issued, sold, or serviced on its behalf.

96.    During all relevant times, Plaintiff Michael Nordquist was a PFC/CBL Contract Holder in that he was an IMO for PFC/CBL.

17

97.     Plaintiff Michael Nordquist solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

98.     Plaintiff Michael Nordquist was appropriately paid commissions for the CBL Policies he solicited, negotiated, sold, issued, and/or serviced throughout the entirety of his relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to him.

99.     CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Michael Nordquist for the CBL Policies he issued or that were issued by other agents on his behalf.

100.    Plaintiff Consolidated Financial Group, LLC is a limited liability company organized under the laws of the state of Nevada who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between itself and Defendant PFC for the benefit of PFC and CBL.

101.    Plaintiff Consolidated Financial Group, LLC was a PFC/CBL Contract Holder in that it was an IMO in relation to CBL/PFC.

102.    Plaintiff Consolidated Financial Group, LLC was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between Consolidated Financial Group, LLC and Defendant PFC for the benefit of PFC and CBL.

103.    Plaintiff Consolidated Financial Group, LLC, through its insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

18

104.     Plaintiff Consolidated Financial Group, LLC was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to Consolidated Financial Group, LLC.

105.     CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Consolidated Financial Group, LLC for the CBL Policies issued, sold, or serviced on its behalf.

106.     Plaintiff Benefits for America Insurance Services, Inc. is a limited liability company organized under the laws of the state of Alabama who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between itself and Defendant PFC for the benefit of PFC and CBL.

107.     Plaintiff Benefits for America Insurance Services, Inc. was a PFC/CBL Contract Holder in that it was a GA in relation to CBL/PFC.

108.     Plaintiff Benefits for America Insurance Services, Inc. was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between Benefits for America Insurance Services, Inc. and Defendant PFC for the benefit of PFC and CBL.

109.     Plaintiff Benefits for America Insurance Services, Inc., through its

19

insurance agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

110. Plaintiff Benefits for America Insurance Services, Inc. was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to Benefits for America Insurance Services, Inc.

111. CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Benefits for America Insurance Services, Inc. for the CBL Policies issued, sold, or serviced on its behalf.

112. Plaintiff Plan America Financial Services, Inc. is a limited liability company organized under the laws of the state of Florida who, during all relevant time periods, was duly authorized to sell insurance policies issued by CBL pursuant to a contract between itself and Defendant PFC for the benefit of PFC and CBL.

113. Plaintiff Plan America Financial Services, Inc. was a PFC/CBL Contract Holder in that it was an IMO in relation to CBL/PFC.

114. Plaintiff Plan America Financial Services, Inc. was, during all relevant time periods, duly authorized to, through its agents and independent contractors, sell or issue insurance CBL Policies pursuant to a contract between Plan America Financial Services, Inc. and Defendant PFC for the benefit of PFC and CBL.

115. Plaintiff Plan America Financial Services, Inc., through its insurance

20

agents and independent contractors, issued, solicited, negotiated, sold, and serviced numerous CBL Policies for the benefit of CBL and PFC.

116. Plaintiff Plan America Financial Services, Inc. was appropriately paid commissions for the CBL Policies solicited, negotiated, sold, issued, and/or serviced by its agents and independent contractors throughout the entirety of its relationship with CBL and PFC until July of 2019. Beginning in July of 2019, CBL and PFC stopped paying commissions properly due and owed to Plan America Financial Services, Inc.

117. CBL and PFC have no lawful basis to avoid paying the commissions to Plaintiff Plan America Financial Services, Inc. for the CBL Policies issued, sold, or serviced on its behalf.

118. Plaintiffs and all others similarly situated have earned significant commissions that remain due and owed. Although these commissions have been earned, they have not been paid to Plaintiffs or all others similarly situated.

119. Plaintiffs and all others similarly situated have complied with all obligations to earn and be entitled to payment of their commissions.

120. Notwithstanding the same, none of the commissions that are due and owed to Plaintiffs and all others similarly situated have been paid.

121. Upon information and belief, both PFC and CBL in this matter had the actual and apparent authority and ability to pay the commissions to Plaintiffs and putative class members but elected not to do so.

122. When Plaintiffs have inquired about the payment of earned

commissions, they have been told that the commissions are continuing to accrue and will be paid. Notwithstanding the same, nothing has been paid to date for any commissions earned from July 2019 through the present.

**COMMON CLASS ALLEGATIONS**

123.   The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

124.   Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiffs brings this action individually and on behalf of the two proposed Classes:

**The PFC/CBL Contract Holders Class:**

All persons or entities who (a) at any point during the three (3) year period of time preceding the date of the filing of this Complaint through the present, (b) had a contract with PFC/CBL related to CBL Policies, (c) earned commissions for the issuance, selling, or servicing of CBL Policies, (d) but have not been paid those commissions on behalf of themselves and the agents acting on their behalf.

125.   Excluded from the proposed Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) PFC, CBL, and any entity in which PFC or CBL has a controlling interest in PFC or CBL and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the proposed Classes.

126.   *Commonality*: All questions concerning the relevant commission policies are common. Whether PFC/CBL owe, or are required to pay commissions to the PFC/CBL Contract Holders are common. Each and every member of the proposed Classes is subject to the relevant policies and procedures. Further, the answer to this question will drive other answers in the litigation, including whether the

22

nonpayment of commissions violates the terms of the PFC/CBL Contract Holders contracts.

127. *Predominance*: Common questions of law and fact predominate over any individual issues that may be presented, because PFC and CBL have a pattern, practice and policy of failing to pay PFC/CBL Contract Holders owed commissions. These questions include, but are not limited to:

> a. Whether PFC has any lawful basis to avoid paying commissions to Plaintiffs and putative class members;
>
> b. Whether PFC's failure to pay commissions to Plaintiffs and putative class members constitutes a breach of contract;
>
> c. Whether PFC has been unjustly enriched by failing to pay commissions to Plaintiffs and putative class members;
>
> d. What is the proper measure of damages sustained by members of the putative classes.

128. *Numerosity*: The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are readily identifiable through the business records maintained by PFC and CBL, and may be notified of the pendency of this action by published and/or mailed notice. Upon information and belief, members of the proposed Classes include hundreds of present and former PFC/CBL Contract Holders who had their earned commissions lawfully withheld.

129. *Typicality*: Plaintiffs' claims are typical of the claims of the proposed Classes and all are based on the same facts and legal theories, as all such claims arise out of PFC/CBL's conduct in that PFC/CBL had a specific policy to withhold earned commissions.

23

130.    *Adequate Representation*: Plaintiffs are adequate representatives of the proposed Classes in that they do not have antagonistic or conflicting claims with other members of the class. Plaintiffs have also retained counsel experienced in the prosecution of complex class action litigation. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of the responsibilities to the putative class and have accepted such responsibilities.

131.    *Superiority*: A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs anticipate no difficulty in managing and maintaining this action as a class action. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### Breach of Contract

132.    All paragraphs of this complaint are incorporated herein as if fully restated.

133.    There exist valid and enforceable contracts between Plaintiffs/the class members and Defendant PFC for the payment of commissions in exchange for the sale of insurance products.

134.    Those contracts were supported by consideration and valid in all respects.

24

135. For many years, the Plaintiffs and the class members sold insurance products and received commissions from PFC pursuant to those contracts.

136. In July of 2019, PFC stopped paying Plaintiffs and the class members the commissions that they had earned and were owed.

137. There is no justification, under the contracts or otherwise, for PFC's failure to pay the commissions owed to Plaintiffs and the class members.

138. PFC's failure to pay commissions to Plaintiffs and the class members constitutes a material breach of those contracts.

139. Plaintiffs and the class members have been damaged by PFC's breach of contract by at least the amount of commissions that were earned and are owed and PFC failed and refused to pay, which is in excess of $25,000.

## SECOND CAUSE OF ACTION
### Alternative Claim for Unjust Enrichment

140. All paragraphs of this complaint are incorporated herein as if fully restated.

141. At the specific request of PFC and for its use and benefit, Plaintiffs and the class members have performed work for PFC in the form of making sales of insurance products.

142. During and since the performance of work by Plaintiffs and the class members, PFC has failed to pay them and there is due and owing to Plaintiffs and the class members from PFC, a principal sum amount of over $25,000.

143. As a result of PFC's refusal to pay Plaintiffs and the class members the above-stated sum due and owing to them, PFC has become unjustly enriched in the

25

amount of at least $25,000.

**THIRD CAUSE OF ACTION**
**Alternative Claim for Quantum Meruit**

144.    All paragraphs of this complaint are incorporated herein as if fully restated.

145.    Plaintiffs and the class members rendered valuable consideration to PFC, in the form of work performed to sell insurance products for PFC, for which they have not been paid. The consideration has a reasonable value of over $25,000, although the exact amount is for the jury.

146.    At the time that Plaintiffs and the class members performed the work, they reasonably expected to be paid by PFC. PFC received and benefitted from the work with knowledge or reason to know that Plaintiffs and the class members expected to be paid. PFC voluntarily accepted the benefit of the work and kept the benefits therefrom without waiving, refusing, or returning the benefit.

147.    Plaintiffs and the class members are entitled under the doctrine of quantum meruit to recover damages in the amount of at least $25,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Classes pray the Court for the following relief:

1.      That the Court certify the Classes pursuant to Rule 23 of the North Carolina Rules of Civil Procedure;

2.      That the Court name Plaintiffs as Class Representatives and their counsel as Class Counsel;

26

3. That the Court grant restitution to Plaintiffs and the Classes and require PFC to disgorge ill-gotten gains and monies by which it was unjustly enriched;

4. That Plaintiffs and the Classes have and recover damages from PFC for breach of contract;

5. That the Court award attorneys' fees to Plaintiffs and the Classes;

6. That the Court award Plaintiffs and the Classes pre-judgment and post-judgment interest at the highest legal rate provided by law;

7. That all costs of this action be taxed against PFC; and

8. That the Court award Plaintiffs and the Class such other and further relief as this Court may deem just and proper.

9. Plaintiffs demand a trial by jury.

This 22nd day of October, 2021.

*Jeremy R. Williams* (with permission, MEL)
Matthew E. Lee
N.C. State Bar No. 35405
Mark R. Sigmon
N.C. State Bar No. 37762
Jeremy R. Williams
N.C. State Bar No. 48162
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
mlee@milberg.com
msigmon@milberg.com
jwilliams@milberg.com

27

Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
**MAGINNIS HOWARD**
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com

*Attorneys for Plaintiffs*

28